## IN THE UNITED STATES DISTRICT COURT FOR THE
## WESTERN DISTRICT OF OKLAHOMA

WMS SPRINGS, INC.,     )
         )
      **Plaintiff,**   )
         )
**v.**         )   Case No.  5:20-CV-71-R
         )
         )
**HUITT-ZOLLARS, INC.,**   )
         )
      **Defendant.**   )

## ORDER

Before the Court is Defendant Huitt-Zollars, Inc.'s ("HZI") Motion for Partial Summary Judgment. Doc. No. 21. Plaintiff WMS Springs, Inc. ("WMS Springs") responded in opposition, Doc. No. 22, and HZI then filed a reply. Doc. No. 25. The Court finds as follows.

This dispute arises from contracted engineering work for the development of a 17.33-acre residential addition known as the Whistle Creek Addition ("the Property). Doc. No. 21, pp. 1–2. Between February 2016 and July 2018, three different entities owned the Property. *Id.* Each of the different owners, or affiliates, entered into a total of four different contracts for engineering work on the Property with HZI, a Texas-based engineering firm. *Id.*

First, on February 23, 2016, Block One Communities, LLC ("Block One"), an affiliate of the addition's landowner, Tracy & Lisa Williams Rentals, LLC ("TLW Rentals"), contracted with HZI to perform engineering tasks for $74,156 ("Contract 1").

Doc. No. 21, pp. 1–2. After performing the requisite engineering tasks, Block One paid HZI the full contract amount for its services. *Id.* p. 2.

Next, "[i]n July 2016, TLW Rentals conveyed the Property to WMS Holdings, LLC ("WMS Holdings")." *Id.* WMS Holdings then contracted with HZI to perform additional engineering tasks on the Property for $13,250 ("Contract 2") on February 28, 2017, and for $18,280 again on May 24, 2017 ("Contract 3"). *Id.* WMS Holdings paid HZI in full after it completed the work on Contract 2 and Contract 3. *Id.*

In July 2018, WMS Holdings sold the Property to WMS Springs, *id.*, and on August 10, 2018, WMS Springs contracted with HZI to perform additional engineering work for $15,600 ("Contract 4"). *Id.* HZI has only been paid $7,500 for its work on Contract 4 because, WMS Springs alleges, HZI never completed the work outlined in Contract 4. *Id.*; Doc. No. 1-2, ¶ 20.

Accordingly, WMS Springs withheld the remaining $8,100 and brought breach of contract actions against HZI for damages in excess of $75,000, alleging that HZI failed to perform and that its "refusal to turn over any of the engineering documents [from Contracts 1 through 3] is … causing continued delays in the development of [the Property]." Doc. No. 1-2, ¶ 21.

Summary judgment is appropriate "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). "An issue is 'genuine' if there is sufficient evidence on each side so that a rational trier of fact could resolve the issue either way. . . An issue of fact is 'material' if under the substantive law it is essential to the proper disposition of the claim." *Adler v.*

*Wal-Mart Stores, Inc.*, 144 F.3d 664, 670 (10th Cir. 1998) (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986)). The Court construes all facts and reasonable inferences in the light most favorable to the plaintiff, the non-moving party. *Macon v. United Parcel Serv., Inc.*, 743 F.3d 708, 712–713 (10th Cir. 2014). The moving party, HZI, bears the initial burden of demonstrating the basis for its motion and of identifying those portions of "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any," that demonstrate the absence of a genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986) (quoting Fed. R. Civ. P. 56(c)).

If that burden is satisfied, the burden shifts to the plaintiff to show the existence of a genuine issue of material fact. *Whitesel v. Sengenberger*, 222 F.3d 861, 867 (10th Cir. 2000). Plaintiff "may not rest upon mere allegations" in her pleading to satisfy this requirement. *Anderson*, 477 U.S. at 256. Rather, Rule 56 "requires [Plaintiff] to go beyond the pleadings and by [its] own affidavits, or by the 'depositions, answers to interrogatories, and admissions on file,' designate 'specific facts showing that there is a genuine issue for trial.'" *Celotex*, 477 U.S. at 324. "[A]ffidavits must be based upon personal knowledge and set forth facts that would be admissible in evidence; conclusory and self-serving affidavits are not sufficient." *Hall v. Bellmon*, 935 F.2d 1106, 1111 (10th Cir. 1991).

HZI seeks partial summary judgment against WMS Springs. Specifically, HZI argues that WMS Springs is not a party to Contracts 1 through 3, and therefore, the breach of contract claims for Contracts 1 through 3 fail as a matter of law. Doc. No. 21, p. 8. WMS Springs agrees that it was not a party to Contracts 1 through 3; however, it argues that it

was an intended beneficiary of each contract, and accordingly, it can enforce each contract against HZI. Doc. No. 22, p. 7.

Additionally, HZI argues WMS Springs's claim for damages should be limited to $7,500 because provisions in Contract 4 limit liability and consequential damages. Doc. No. 21, p. 11.

"A third-party beneficiary of a contract may … maintain an action … if it appears the parties intended to recognize [it] as a beneficiary. It is the intention of the parties … as reflected in the contract … [that] answer[s] … whether … [the parties] intended" to benefit a third-party. *Keel v. Titan Const. Corp.*, 639 P.2d 1228, 1231 (Okla. 1981). In Oklahoma, only if "[a] contract [is] made *expressly* for the benefit of a third person, may [it] be enforced…" by a third party. Okla. Stat. tit. 15 § 29 (emphasis added). "Expressly" means "in an express manner; in direct or unmistakable terms; explicitly; definitely; directly." *Keel*, 639 P.2d at 1231 (quoting *Watson v. Aced*, 319 P.2d 83 (Cal. App. 1957)).

While the terms of the agreement do not have to "specifically name[] … a beneficiary," *id.*, the Tenth Circuit has explained that "the benefit cannot be enforced if it has to be implied from the terms of the contract or results incidentally from its performance." *Colony Ins. Co. v. Burke*, 698 F.3d 1222, 1230 (10th Cir. 2012) (quoting *Oil Capital Racing Ass'n, Inc. v. Tulsa Speedway, Inc.,* 628 P.2d 1176, 1179 (Okla. Civ. App. 1981)); *see also May v. Mid-Century Ins. Co.*, 151 P.3d 132, 141 (Okla. 2006) (explaining that "[o]ne to whom, by the express terms of a contract, no obligation is due from its promissor, cannot qualify for the status of an intended or implied third-party beneficiary.").

4

Contracts 1 through 3 do not contain express language indicating WMS Springs was an intended third-party beneficiary of HZI's agreements with Block One Communities or WMS Holdings and thus, WMS Springs was not a third-party beneficiary to those contracts.[1]

WMS Springs argues that "[t]he evidence is clear that once Whistle Creek Addition was sold to WMS, they were obviously an intended beneficiary." Doc. No. 22, p. 9. However, whether WMS Springs is a third-party beneficiary depends not on the parties' intent at the time WMS Springs purchased the Property from WMS Holdings, but on the intent of the parties to Contracts 1 through 3 when they were *formed*. *See Keel,* 639 P.2d at 1231 (explaining that "[i]t is the intention of the parties … as reflected in the contract" that the court considers when determining third-party beneficiary status) (emphasis added). As the Tenth Circuit explained in *Colony Ins.*, "the benefit cannot be enforced if it … results incidentally from its performance." 698 F.3d at 1230.

Here, there is no express language in Contracts 1 through 3 indicating an intent to confer a benefit on WMS Springs, or any similar entity. WMS Springs did not even exist until July of 2018—after the formation and completion of Contracts 1 and 2.[2] Doc. No. 25,

---

[1] HZI also argues that the non-assignment clause in paragraph 16 illustrates HZI's intent *not* to confer third-party beneficiary status on WMS Springs. Doc. No. 21, p. 10 (emphasis added). However, non-assignment clauses do not necessarily eliminate the parties' intent to benefit non-parties. *See, e.g.*, *Woolard v. JLG Indus., Inc.*, 210 F.3d 1158, 1169–70 (10th Cir. 2000) (explaining that "[a]lthough the assignment of a contract will confer rights and obligations upon a third-party, the assignment is unrelated to one's status as a third-party beneficiary.").

[2] The Court "generally does not review issues raised for the first time in a reply brief," but the Court will "make an exception when the new issue argued in the reply brief is offered in response to an argument raised in the [plaintiff's] brief." *Beaudry v. Corrections Corp. of America*, 331 F.3d 1164, 1166 n.3 (10th Cir. 2003). Here, WMS Springs argued in its Response that "once Whistle Creek Addition was sold to WMS, they were obviously an intended beneficiary…". Doc. No. 22, p. 9. HZI responded to this argument by explaining that "WMS Springs did not even exist at that time…". Doc. No. 25, p. 2 (suggesting that the Court take judicial notice of WMS Springs effective

p. 2. Further, WMS Springs does not identify any contractual language expressing that future owners of the Property would be entitled to the benefit of HZI's performance. Rather, the agreement contained a provision expressly limiting ownership of prepared documents to HZI.[3] Doc. No. 21, p. 10. Therefore, the contracts terms do not classify WMS Springs as an intended beneficiary.

Additionally, the provisions limiting HZI's potential liability for breach of Contract 4 to $7,500 are enforceable for the following reasons.

"The Oklahoma Supreme Court has long recognized that exculpatory contracts, i.e., a contract to avoid any and all liability for damages …, may be valid and enforceable." *Combs v. W. Siloam Speedway Corp.*, 406 P.3d 1064, 1066 (Okla. Civ. App. 2017); *see e.g., Abercrombie & Fitch Stores, Inc. v. Penn Square Mall Ltd. P'ship*, 425 P.3d 757, 764 (Okla. 2018) (upholding an exculpatory clause excluding claims for "indirect or consequential damages."). In *Abercrombie*, the Court found that the trial court correctly withheld consequential damages on a *breach of contract* action, but that the trial court should have permitted the jury to consider consequential damages on a *negligence* action. *Abercrombie*, 425 P.3d at 763 (emphasis added). The Court reasoned that excluding "consequential damages" by a provision in a contract is ordinarily permitted. *Id.*

---

[3] A provision in Contracts 1 through 3, entitled "Ownership of Instruments of Service," provides that

> [a]ll reports, drawings, specifications, computer files, field data, notes and other documents and instruments prepared by HUITT-ZOLLARS as instruments of service shall remain the property of HUITT-ZOLLARS. HUITT-ZOLLARS shall retain all common law, statutory and other reserved rights including the copyright thereto.

Doc. No. 21-1, ¶14; Doc. No. 21-2, ¶14; Doc. No. 21-3, ¶14.

(explaining that "'consequential damages' ordinarily refers to contract damages, not tort damages.").

HZI argues that any recovery on WMS Springs's breach of contract action should be limited to $7,500, the amount of direct damages allegedly suffered by WMS Springs, because Contract 4 expressly excluded any claims for consequential damages and limited liability to the total compensation value in the contract. Doc. No. 21-4, p. 3 ¶¶ 6, 17.

Consequential damages are "[l]osses that do not flow directly and immediately from an injurious act but that result indirectly from the act." Black's Law Dictionary (10th ed. 2014). The agreement between the parties excludes recovery for consequential damages by providing that

> [WMS Springs] shall not be liable to HUITT-ZOLLARS and HUITT-ZOLLARS shall not be liable to [WMS Springs] for any consequential damages incurred by either due to the fault of the other, regardless of the nature of this fault, or whether it was committed by [WMS Springs] or HUITT-ZOLLARS, their employees, agents or subcontractors. Consequential damages include, but are not limited to loss of use and loss of profit.

Doc. No. 21-4, p. 3, ¶ 6.

Additionally, Contract 4 contains a limitation of liability provision which states that

> IN ORDER FOR [WMS Springs] TO OBTAIN THE BENEFITS OF A FEE WHICH INCLUDES A LESSER ALLOWANCE FOR RISK FUNDING, [WMS Springs] AGREES TO LIMIT HUITT-ZOLLARS' LIABILITY ARISING FROM HUITT-ZOLLARS' PROFESSIONAL ACTS, ERRORS OR OMISSIONS, SUCH THAT THE TOTAL AGGREGATE LIABILITY OF HUITT-ZOLLARS SHALL NOT EXCEED HUITT-ZOLLARS' TOTAL COMPENSATION FOR THE SERVICES RENDERED ON THIS PROJECT.

Doc. No. 21-4, p. 5, ¶ 17.

Courts enforce contractual provisions limiting liability unless the provision is unconscionable or in violation of public policy. *Fretwell v. Prot. Alarm Co.*, 764 P.2d 149, 152 (Okla. 1988) (finding that a burglar alarm service agreement limiting liability and damages was not unconscionable and did not violate public policy). "In Oklahoma, a contract violates public policy only if it clearly tends to injure public health, morals or confidence in administration of law, or if it undermines the security of individual rights with respect to either personal liability or private property." *Shepard v. Farmers Ins. Co.*, 678 P.2d 250, 251 (Okla. 1983) (citing *Anderson v. Reed,* 270 P. 854, 856 (Okla. 1928)); *see also Schmidt v. United States*, 912 P.2d 871, 874 (Okla. 1996) (explaining that courts also consider "the equality of the parties' bargaining power, vis-à-vis each other…" in determining whether exculpatory contracts are enforceable). Neither the consequential damages provision nor the limitation of liability provision in Contract 4 is unconscionable or violates public policy here. The two parties—a real estate developer and an engineering firm—held equal levels of bargaining power when the agreement was made and additionally, WMS Springs does not even argue that the provisions are unconscionable or in violation of public policy.

Thus, the provisions limiting liability and damages are enforceable. The express language of the contract limits WMS Springs's recourse to the value of the contract and the provisions do not violate public policy. Therefore, the Court finds that WMS Springs is limited to pursuing $7,500 on its claim for a breach of Contract 4 against HZI.

For the reasons set forth above, HZI's partial motion for summary judgment is GRANTED in its ENTIRETY.

8

**IT IS SO ORDERED** on this 30th day of November 2020.

DAVID L. RUSSELL
UNITED STATES DISTRICT JUDGE